IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| RONALD E. D.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )  Case No. 3:24-cv-2526-DWD |
| | ) |
| FRANK BISIGNANO, Commissioner | ) |
| of Social Security,[2] | ) |
| | ) |
| Defendant. | ) |

MEMORANDUM & ORDER

**DUGAN, District Judge:**

This is an action under 42 U.S.C. §§ 405(g) and 1383(c) for judicial review of Defendant Commissioner of Social Security's ("Commissioner") decision denying Plaintiff's applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income (SSI"). Plaintiff's claims were denied initially and on reconsideration. Plaintiff asks the Court to reverse the Commissioner's final decision and order a remand for a new hearing. For the reasons discussed below, the final agency decision is due to be affirmed.

## I.    Procedural History

Plaintiff filed applications for DIB and SSI on January 5, 2022, alleging disability beginning July 27, 2018. Because a prior ALJ denied an earlier application on April 10,

---

[1] In keeping with the Court's practice, Plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. *See* Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.

[2] Frank Bisignano became the Commissioner of Social Security on May 6, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Court **DIRECTS** the Clerk to substitute Frank Bisignano as the defendant in this suit.

2020, the relevant period for the current application begins April 11, 2020. Plaintiff's claims were denied initially and on reconsideration. After a haring on December 12, 2023, ALJ Stuart Janney issued an unfavorable decision on March 27, 2024. The Appeals Council denied review on September 20, 2024, making the decision final. Plaintiff now seeks judicial review under 42 U.S.C. §§ 405(g) and 1383(c). To be entitled to DIB, Plaintiff was required to establish disability on or before his date last insured of December 2023.

## II.    Applicable Legal Standards

Plaintiff is entitled to DIB if he can demonstrate he became disabled before his Date Last Insured ("DLI") of December 31, 2023. *Liskowitz v. Astrue*, 559 F.3d 736, 740 (7th Cir. 2009); 42 U.S.C. §§ 423(a)(1)(A), (c)(1). Nevertheless, "[a]n applicant who cannot establish that she was disabled during the insured period for DIB may still receive SSI benefits if she can establish that she is disabled and has limited means." *Sienkiewicz v. Barnhart*, 409 F.3d 798, 802 (7th Cir. 2005), citing 42 U.S.C. §§ 1381a, 1382; *Liskowitz*, 559 F.3d at 740 n.2.

To qualify for DIB and SSI, a claimant must be disabled within the meaning of the applicable statutes.[3] A disability is defined as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that, *inter alia*, has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). The claimant bears the burden of

---

[3] The statutes and regulations pertaining to Disability Insurance Benefits (DIB) are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404. The statutes and regulations pertaining to SSI are found at 42 U.S.C. § 1382 and 1382c, et seq., and 20 C.F.R. pt. 416. As is relevant to this case, the DIB and SSI statutes are identical. *See Craft v. Astrue*, 539 F.3d 668, 647, n.6 (7th Cir. 2008). For convenience, most citations herein are to the DIB regulations.

producing medical evidence to support the claims of disability. *Eichstadt v. Astrue*, 534 F.3d 663, 668 (7th Cir. 2008); *see also* 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under disability unless he furnishes such medical and other evidence of the existence thereof."). While a claimant's statements of pain or other symptoms are considered, those statements alone are not conclusive evidence of a disability. *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 404.1529.

To assess an alleged disability, the ALJ employs a "five-step sequential evaluation process." *See* 20 C.F.R. §§ 404.1520 (a)(1), (2), (4); 416.920(a)(1), (4). The ALJ asks the following questions: (1) whether the claimant is doing substantial gainful activity; (2) whether the claimant has a severe medically determinable physical or mental impairment that meets certain duration requirements or a combination of impairments that is severe and meets the duration requirements; (3) whether the claimant has an impairment that meets or equals one of the impairments listed in the regulations and satisfies the duration requirements; (4) whether, in view of the claimant's residual functional capacity ("RFC") and past relevant work, he or she can perform past relevant work; and (5) whether, in view of the claimant's RFC, age, education, and work experience, he or she can adjust to other work. *See* 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4); *see also Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

If the claimant is doing substantial gainful activity under step 1, does not have an impairment or combination of impairments as described at step 2, can perform past relevant work under step 4, or can adjust to other work under step 5, then the claimant is not disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(i),(ii), (iv), (v); 416.920(a)(4)(i), (ii), (iv), (v). If

the claimant has an impairment that meets the requirements of step 3 or is incapable of adjusting to other work under step 5, then he or she is disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii),(v); 416.920(a)(4)(iii), (v). The claimant has the burden of proof at steps 1-4. *Mandrell v. Kijakazi*, 25 F.4th 514, 516 (7th Cir. 2022).

A severe impairment under step 2 is defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c); *see also Barnhart v. Thomas*, 540 U.S. 20, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003). Impairments which are expected to result in death, or those which have lasted or are expected to last for a continuous period of at least twelve months, qualify as severe under the duration requirement. 20 C.F.R. §§ 404.1520(a)(4)(ii); 404.1509; 416.920(a)(4)(ii); 416.909. "[T]he step two determination of severity is 'merely a threshold requirement' " to "proceed to the remaining steps of the evaluation process." *Castile v. Astrue*, 617 F.3d 923, 926-27 (7th Cir. 2010). Once an ALJ makes a finding that one or more of a claimant's ailments are severe, he must "consider the aggregate effect of the entire constellation of ailments—including those impairments that in isolation are not severe." *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003) (citing 20 C.F.R. § 404.1523; and then collecting cases).

Impairments and related symptoms may cause physical and mental limitations that affect what may be done in a work setting. *See* 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1). The RFC at issue in step 4 assesses the most that a claimant can do in a work setting, notwithstanding those limitations. *See* 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1); *accord* SSR 96-8p, 1996 WL 374184, *2; *Clifford v. Apfel*, 227 F.3d 863, 872-73

n.7 (7th Cir. 2000). In this way, an RFC is an assessment of the claimant's ability to perform sustained work-related physical and mental activities in a work setting on a regular and continuing basis, *i.e.*, for eight hours a day and five days a week or an equivalent work schedule. *See Tenhove v. Colvin*, 97 F. Supp. 2d 557, 568 (E.D. Wisc. 2013); SSR 96-8p, 1996 WL 374184, *2; *accord Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014). An RFC must be based on all of the relevant medical and other evidence contained in the record. *See* 20 C.F.R. §§ 404.1545(a)(3); 416.945(a)(3); SSR 96-8p, 1996 WL 374184, *2-3, 5.

When completing an RFC, the ALJ must identify the claimant's functional limitations and assess his or her work-related abilities on a function-by-function basis. *See Tenhove*, 97 F. Supp. 2d at 569; SSR 96-8p, 1996 WL 374184, *1, 3; *accord Lechner v. Barnhart*, 321 F. Supp. 2d 1015, 1036 (E.D. Wisc. 2004). The ALJ considers all impairments, including those that are not severe, and the claimant's ability to meet physical, mental, sensory, and other requirements of work. *See* 20 C.F.R. §§ 404.1545(a)(2), (4); 416.945(a)(2), (4); *see also Alesia v. Astrue*, 789 F. Supp. 2d 921, 933 (N.D. Ill. 2011) ("[T]he ALJ must consider the combined effect of all impairments, 'even those that would not be considered severe in isolation.' "). "An impairment or combination of impairments is not severe if it does not significantly limit [the] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1522(a). And, importantly, while a claimant's statements of pain or other symptoms are considered, they alone are not conclusive evidence of a disability. *See* 20 C.F.R. § 404.1529.

As to physical abilities, the ALJ assesses the nature and extent of any physical limitations, then determines the RFC for work activity on a regular and continuing

basis. *See* 20 C.F.R. §§ 404.1545(b); 416.945(b). A limited ability to perform physical demands of work activity, such as sitting, standing, walking, lifting, carrying, pushing, pulling, reaching, handling, stooping, or crouching may reduce the ability to do past work. *See* 20 C.F.R. §§ 404.1545(b); 416.945(b); *see also* SSR 96-8p, 1996 WL 374184, *5-6. Other impairments affecting work abilities include, among other things, impairments imposing environmental restrictions. *See* 20 C.F.R. §§ 404.1545(d); 416.945(d). If the symptoms, signs, or laboratory findings for a severe impairment do not meet or equal those of a listed impairment, the ALJ considers the total limiting effects of all impairments, including medical and nonmedical evidence. 20 C.F.R. §§ 404.1545(e); 416.945(e).

After the identification of the claimant's functional limitations and the assessment of his or her work abilities on a function-by-function basis, the RFC may be expressed by exertional category, including "light." *See Tenhove*, 97 F. Supp. 2d at 569; *accord Lechner*, 321 F. Supp. 2d at 1036; SSR 96-8p, 1996 WL 374184, *3. To do a full range of work in an exertional category, such as "light," the individual must be able to perform substantially all of the functions required at that level. *See* SSR 96-8p, 1996 WL 374184, *5-6. Light work involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b); 416.967(b). Even the weight lifted in a job is very little, a job is considered light work if it requires a good deal of walking or sitting, or sitting most of the time with some pushing and pulling of arm or leg controls. *See* 20 C.F.R. §§ 404.1567(b); 416.967(b). In the absence of additional limiting factors like "loss of fine dexterity or inability to sit for long periods of time," a person

6

considered capable of performing light work is also considered capable of performing

sedentary work. *See* 20 C.F.R. §§ 404.1567(b); 416.967(b).

### III.     **The Decision of the ALJ**

The ALJ followed the five-step analytical framework described above. At step one,

she determined that Plaintiff had not engaged in substantial gainful activity since the

alleged disability onset date, and that he meets the insured status requirements of the

SSA through December 31, 2023. (Doc. 11-2, pg. 12). Plaintiff was 52 years old on the

alleged onset date (Doc. 11-2, pg. 29). At step two, the ALJ found that Plaintiff has the

following severe impairments: major depressive disorder, bipolar disorder, and anxiety

disorder. (Doc. 11-2, pg. 14). The ALJ found that Plaintiff has the following non-severe

impairments: lumbar and cervical spine degenerative disc disease, right ankle spur,

allergic rhinitis, hypertension, hyperlipidemia, hepatic steatosis and pancreatitis, chronic

kidney disease, anemia, diabetes mellitus, obesity, and headache disorder. (Doc. 11-2, pg.

14). The ALJ found that the following conditions, for which claimant alleged a diagnoses,

are not medically determinable: bilateral knee pain, shoulder pain, hand pain,

paresthesias, schizophrenia, post-traumatic stress disorder, and chronic pain. (Doc. 11-2,

pg. 15).

At step three, the ALJ found that Plaintiff does not have any impairments or

combination of impairments that meet any of the listings. (Doc. 11-2, pg. 15).  The ALJ

determined that Plaintiff has a moderate limitation in his ability to understand,

remember, or apply information. He found that Plaintiff has a moderate limitation in his

ability to interact with others. The ALJ also concluded that Plaintiff has a moderate

limitation in his ability to concentrate, persist, or maintain pace. Finally, the ALJ found that Plaintiff has only a mild limitation in his ability to adapt and manage himself. (Doc. 11-2, pgs. 14-18).

Before proceeding to step four, the ALJ assessed Plaintiff's residual functional capacity ("RFC") and concluded that he was able to:

> perform a full range of work at all exertional levels but with the following nonexertional limitations. He can understand, carry out, and remember simple and detailed but not complex instructions. He can tolerate occasional interactions with supervisors, coworkers, and the public and can respond appropriately during the interactions.

(Doc. 11-2, pg. 17).

Next, the ALJ concluded that given Plaintiff's RFC and the vocational expert's ("VE") testimony, Plaintiff was unable to perform his past jobs as a Home Attendant (step 4), but he could perform other work that existed in the national economy (step 5). (Doc. 11-2, pgs. 29-30).[4] As a result, the ALJ found that Plaintiff was not disabled. (Doc. 11-2, pg. 30).

### IV.    Standard of Review and Plaintiff's Arguments[5]

The Court's review of the ALJ's decision is "extremely limited" and "very deferential." *See* 42 U.S.C. § 405(g); *Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022) (quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)). Findings of fact, supported by substantial evidence, are conclusive. *See* 42 U.S.C. § 405(g); *accord Clifford*,

---

[4] The VE testified Plaintiff would be able to perform the following jobs: (1) kitchen helper (medium exertion and unskilled); hospital cleaner (medium exertion and unskilled); and (3) laundry laborer (medium exertion and unskilled). (Doc. 11-2, pg. 30).

[5] The portions of the evidentiary record relevant to Plaintiff's arguments and the Court's resolution of the case are incorporated into the analysis below.

227 F.3d at 869. The Court will reverse the ALJ's decision only if the findings of fact were not supported by substantial evidence or the ALJ applied the wrong legal standard. *See Clifford*, 227 F.3d at 869; *accord Martin v. Saul*, 950 F.3d 369, 373 (7th Cir. 2020). In this context, "substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *See Clifford*, 227 F.3d at 869 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord Jarnutowski*, 48 F.4th at 773. If reasonable minds could differ about whether a claimant is disabled and the ALJ's decision is supported by substantial evidence, then the Court will affirm the denial of claims. *Jarnutowski*, 48 F.4th at 773 (quoting *Elder*, 529 F.3d at 413). When assessing the evidence, the Court reviews the entire record, but does not reweigh the evidence, resolve conflicts, decide credibility questions, or substitute its judgment for that of the ALJ. *See Clifford*, 227 F.3d at 869; *accord Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). The ALJ is not required to address every piece of evidence or testimony presented, but he must build a 'logical bridge' between the evidence and his conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009); *see also Gedatus v. Saul*, 994 F.3d 893, 901 (7th Cir. 2021) ("The ALJ's summary does not mention every detail. But it need not."). An ALJ is not permitted to "cherry pick evidence from the record" to support a conclusion without engaging with evidence weighing against it. *Plessinger v. Berryhill*, 900 F.3d 909, 915 (7th Cir. 2018). The Court will not decline to engage in a critical review to act as a rubber stamp. *See Clifford*, 227 F.3d at 869.

Plaintiff makes three arguments in support of reversal of the Commissioner's decision:

1.      The ALJ's evaluation of Plaintiff's subjective statements was legally insufficient because the ALJ failed to properly evaluate the relevant regulatory factors, as required by 20 C.F.R. §§ 404.1529 and 416.929 and SSR 16-3p.

2.      The ALJ's evaluation of Plaintiff's mental RFC was legally insufficient and his conclusion that Plaintiff could manage simple and detailed tasks, but not complex tasks, and occasional interaction with supervisors, coworkers, and the public is not supported by substantial evidence.

3.      The ALJ's physical RFC assessment was not supported by substantial evidence because he failed to analyze the combined impact of Plaintiff's lumbar degenerative disc disease and obesity.

## V.      Analysis

### A.  Evaluation of Subjective Symptoms

Plaintiff argues that the ALJ's evaluation of his subjective statements was legally insufficient because the ALJ failed to properly evaluate the relevant regulatory factors under 20 C.F.R. §§ 404.1529 and 416.929 and SSR 16-3p. Specifically, Plaintiff contends that the ALJ did not expressly address "many" of the regulatory factors, such as aggravating or precipitating factors for his pain, the effectiveness or side effects of medications, non-treatment measures for symptom relief, and aspects of his mental health functioning like treatment history, lack of insight into his illness, and the minimal effectiveness of prescribed medications. Plaintiff further criticizes the ALJ for not explicitly explaining how objective medical findings undermined his statements about back pain, asserting that such findings (e.g., mild spinal impairments on imaging) do not correlate with specific pain levels and thus fail the "logical bridge" standard. Additionally, Plaintiff faults the ALJ for inadequately considering the impact of his obesity on pain, and for noting conservative treatment without detailing how it factored

into discounting his claims, including omitting discussion of a one-time five-day prescription for Norco following a back pain complaint after lifting a heavy object. These arguments lack merit. The ALJ's evaluation was reasonable, supported by substantial evidence, and compliant with the regulations.

An ALJ's assessment of a claimant's subjective symptoms is entitled to significant deference and will be reversed only if "patently wrong," meaning it lacks any explanation or support. *Hess v. O'Malley*, 92 F.4th 671, 679 (7th Cir. 2024); *Grotts v. Kijakazi,* 27 F.4th 1273, 1278 (7th Cir. 2022). Subjective statements about pain or other symptoms are not conclusive evidence of disability and must be supported by objective evidence. 42 U.S.C. § 423(d)(5)(A); *Grotts*, 27 F.4th at 1278. When a claimant's statements are not substantiated by objective medical evidence alone, the ALJ must consider regulatory factors such as the nature and intensity of symptoms; precipitating or aggravating factors; relieving factors; dosage and effectiveness of medications; treatment history; non-treatment measures; physicians' opinions or observations; functional restrictions; prior work record; daily activities; and other relevant factors. 20 C.F.R. §§ 404.1529(c), 416.929(c); SSR 16-3p; *Zurawski v. Halter*, 245 F.3d 881, 887-88 (7th Cir. 2001). However, the ALJ need not mechanically discuss every factor or detail, nor address every piece of evidence. *Gedatus v. Saul*, 994 F.3d 893, 903 (7th Cir. 2021) ("[A]n ALJ need not discuss every detail related to every factor."); *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024) (no requirement to cite support for every proposition or fully summarize the record). Summaries of medical evidence may be "partial and selective" yet still appropriate. *Grotts*, 27 F.4th at

11

1278 (citing *Gedatus*, 994 F.3d at 901). The decision, which should be read holistically, must simply build a discernible "logical bridge" between the evidence and conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009); *Zellweger v. Saul*, 984 F.3d 1251, 1252, 1254 (7th Cir. 2021). The claimant bears the burden of proving limitations, *Prill v. Kijakazi*, 23 F.4th 738, 746 (7th Cir. 2022), and a lack of supporting medical opinions setting "any other limits, greater than those the ALJ set" is a "fundamental problem." **Gedatus, 994 F.3d at 904-05**.

The ALJ properly applied this framework. He first acknowledged that Plaintiff's medically determinable impairments (severe mental health conditions and non-severe physical impairments like degenerative disc disease and obesity) could reasonably cause his alleged symptoms. (Doc. 11-2, pg. 22). However, he found Plaintiff's statements about their intensity, persistence, and limiting effects (e.g., standing only a few minutes, walking a couple of blocks, lifting no more than eight pounds, constant back and knee pain, severe anxiety, PTSD, memory and concentration issues, paranoia, and frustration with social interactions) to be "generally inconsistent" with the record. (Doc. 11-2, pgs. 23-24). The ALJ built a logical bridge by contrasting Plaintiff's subjective complaints with objective evidence, treatment history, and daily activities. This meets the minimal articulation requirement. *See Hess v. O'Malley*, 92 F.4th 671, 679 (7th Cir. 2024) (reversal requires the decision to be "patently wrong," meaning the decision "lacks any explanation or support."); *Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024) (the ALJ satisfies minimal articulation by providing reasoned support without needing to address

every piece of evidence, fully summarize the record, or cite every reasoning chain); *Zellweger v. Saul*, 984 F.3d 1251, 1252 (7th Cir. 2021) (courts review ALJ decisions holistically to assess if the path of reasoning is discernible, without requiring exhaustive detail); *Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008) (clarifying that minimal articulation is met if the determination is reasoned and supported, with reversal only for decisions lacking any explanation or support).

Contrary to Plaintiff's assertion, the ALJ adequately considered the regulatory factors to the extent relevant. For the nature and intensity of symptoms, the ALJ contrasted Plaintiff's extreme physical claims (e.g., debilitating pain since 2018, knees "giving out," inability to sit in a car) with consistently mild or normal objective findings, including mild spondylosis (July 2018 imaging) (Doc. 11-2, pg. 23); mild degenerative arthrosis of the right first MTP joint and a small spur (March 2019 imaging) (Doc. 11-2, pg. 23); no acute low-back abnormalities (exam following 2021 back pain complaints) (Doc. 11-2, pg. 23); mild degenerative changes (January 2022 lumbar spine imaging) (Doc. 11-2, pg. 23); mild multilevel degenerative changes (June 2022 cervical spine imaging) (Doc. 11-2, pg. 24); no spinal deformities or motion limits in the August 2022 consultative exam with Dr. Feinerman (plus normal ambulation without device, gait, muscle strength, reflexes, and negative straight-leg raises) (Doc. 11-2, pgs. 21-23); and no abnormalities in the 2023 primary care exam related to acute pain following lifting a stove. Objective medical evidence is a "useful indicator" for assessing symptom intensity and persistence, 20 C.F.R. § 404.1529(c)(2), and "a discrepancy between the degree of pain claimed by the

applicant and that suggested by medical records is probative of exaggeration." *Sienkiewicz v. Barnhart*, 409 F.3d 798, 803-04 (7th Cir. 2005). The ALJ explicitly noted that the state-agency medical consultants found Plaintiff suffered from no severe physical impairments (Doc. 11-2, pg. 23; Doc. 11-4, pgs. 40, 64). The ALJ further found these opinions to be consistent with the objective medical evidence, persuasive, and inconsistent with Plaintiff's subjective complaints. (Doc. 11-2, pg. 23). No expert opinion corroborated greater limitations, bolstering the ALJ's findings. *See Gedatus*, 994 F.3d at 904-05.

For mental symptoms (e.g., anxiety, depression, memory issues, paranoia), the ALJ addressed intensity through treatment records showing limited complaints and normal exams (Doc. 11-2, pgs. 20-23), without needing separate factor-by-factor discussion for each impairment. *See Warnell*, 97 F.4th at 1053-54.

Regarding treatment and relieving factors, including medications, efficacy, and non-treatment measures, the ALJ reasonably highlighted Plaintiff's sparse, conservative care as inconsistent with disabling symptoms. Minimal or routine treatment can undermine claims of extreme symptoms. *Deborah M. v. Saul*, 994 F.3d 785, 789 (7th Cir. 2021); *Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008); *Sienkiewicz*, 409 F.3d at 803-04. For instance, the ALJ noted no musculoskeletal treatment until the 2023 heavy-lifting incident, refusal to discuss surgery or consider conservative options like steroid injections, limited physical therapy (despite claiming it unhelpful), and overall "unremarkable" records with no surgical indications. (Doc. 11-2, pgs. 24-25). This directly

14

addresses treatment efficacy and relieving factors, as gaps and refusals suggest symptoms were not as persistent as alleged.

Plaintiff's criticism that the ALJ omitted a one-time five-day Norco prescription is unavailing; the ALJ need not discuss every detail, *Books v. Chater*, 91 F.3d 972, 980 (7th Cir. 1996), and this brief, post-incident prescription aligns with conservative care and does not contradict the ALJ's conclusions. Similarly, the ALJ addressed functional restrictions and observations by noting Plaintiff's rare reports of activity limitations to providers and noting he only mentioned significant ones when discussing disability benefits. Factors that are inconsistent with Plaintiff's subjective complaints. (Doc. 11-2, pg. 23).

Plaintiff's obesity argument fares no better. The ALJ acknowledged BMI in the 30s (non-extreme obesity) and its potential to exacerbate pain but found no objective evidence of greater limitations on musculoskeletal, respiratory, or cardiovascular functioning. (Doc. 11-2, pg. 23). This is sufficient, as speculation about obesity's impact is inadequate; Plaintiff must show specific limitations, which he did not testify to, and no provider opined any. *Prochaska v. Barnhart*, 454 F.3d 731, 736-37 (7th Cir. 2006); see also *Dornseif v. Astrue*, 499 Fed. App'x. 598, 600 (7th Cir. 2013) (failure to explain obesity's work impact renders omission harmless). Unrefuted state-agency notes on mild obesity reinforce the ALJ's analysis. (Doc. 11-4, pgs. 39-40, 64-65).

Finally, the ALJ considered daily activities and other factors, noting Plaintiff's reports of enjoying vehicle/yard work, cruising with his wife, hiking, camping, tracking,

driving, and shopping alone, activities conflicting with the alleged severity of Plaintiff's physical and mental symptoms. (Doc. 11-2, pgs. 16-17, 21; Doc. 11-21, pg. 39). Such inconsistencies support the ALJ's decision to discount the alleged severity of Plaintiff's symptoms. 20 C.F.R. § 404.1529(c)(3)(i); *see also Shideler v. Astrue*, 688 F.3d 306, 312 (7th Cir. 2012) (credibility findings need not specify every inconsistent statement). The ALJ also noted no medical necessity for an assistive device, despite claims of cane use. (Doc. 11-2, pg. 24).

In sum, reading the decision holistically, the ALJ built a discernible logical bridge: Plaintiff's subjective complaints were discounted because they conflicted with objective evidence, unrefuted state-agency opinions, sparse and conservative treatment, minimal provider-reported restrictions, and inconsistent activities. The ALJ's evaluation was not patently wrong, unreasonable, or unsupported, but backed by substantial evidence, and a reasonable mind could accept it as adequate. Accordingly, remand is not warranted on Claim 1.

### B. Mental RFC EVALUATION

#### 1. Preliminary Matter

As a preliminary matter, the Court addresses the Commissioner's argument regarding the relevance of the RFC's limitation to detailed work. The RFC restricted Plaintiff to simple (unskilled) and detailed (semi-skilled) work, with no limitations on task pace. The Commissioner asserts that because the VE identified three unskilled jobs that Plaintiff could perform (Doc. 11-2, pgs. 30, 81), the ALJ's decision stands absent

16

persuasive evidence that Plaintiff cannot perform simple, unskilled work, rendering the detailed-work limitation irrelevant.

The Commissioner is correct to the extent that the detailed-work limitation does not affect the outcome if substantial evidence supports the ALJ's finding that Plaintiff can perform the identified unskilled jobs. *See* 20 C.F.R. § 404.1578(a) (defining unskilled work as involving "little or no judgment to do simple duties"). The ALJ specifically found that Plaintiff could manage the complexity and pace of such unskilled work. (Doc. 11-2, pgs. 18, 27, 30, 81). The Court therefore examines whether substantial evidence supports Plaintiff's ability to perform simple, unskilled work. Because the Court concludes that it does, it need not determine whether the ALJ also properly found Plaintiff capable of semi-skilled or detailed work, as any error on that point would be harmless. *See Diaz v. Chater,* 55 F.3d 300, 307 (7th Cir. 1995) (error in assessing capacity for light work harmless where substantial evidence supported sedentary work, sufficing for non-disability finding); *Cooley v. Berryhill,* 738 F. App'x 877, 881 (7th Cir. 2018) (error at step four harmless due to alternative step five finding); cf. *Jill A. W. v. Kijakazi,* No. 20 C 3854, 2023 WL 2954919, at *3 (N.D. Ill. Apr. 14, 2023) (declining harmless error for step four without ALJ's alternative step five finding, as courts cannot invent rationales). Unlike in *Jill,* the ALJ's step five conclusion here relies directly on the VE's unskilled jobs and Plaintiff's supported capacity for them, without requiring the Court to hypothesize unarticulated findings.

### 2. Plaintiff's Arguments

The Plaintiff asserts that the administrative law judge's mental residual functional capacity determination, which limited him to simple and detailed but not complex tasks with occasional interactions, was legally insufficient and lacked substantial evidentiary support, thereby requiring remand. The Plaintiff specifically contends that the administrative law judge erred by failing to: (1) identify the particular problems giving rise to the moderate limitations in concentration, persistence, or pace and explain how the residual functional capacity accommodated those limitations; (2) connect the state-agency consultants' opinions permitting unskilled and semi-skilled work to the formulation of the residual functional capacity; (3) quantify the frequency of the Plaintiff's need for redirection and confront the vocational expert's testimony that even one instance of daily redirection after training would preclude all work; and (4) address evidence from the August 2022 consultative examination concerning agitation and anger. Additionally, the Plaintiff suggests that restrictions to simple tasks are inherently incompatible with moderate limitations in concentration, persistence, or pace, invoking pre-2017 Seventh Circuit precedent such as *O'Connor-Spinner v. Astrue,* 627 F.3d 614 (7th Cir. 2010).

As is set forth more fully below, remand is not warranted. The administrative law judge's assessment complied with the applicable regulations and rulings, constructed a logical bridge between the evidence and the conclusions reached, and rested upon substantial evidence.

### 3.  Accommodation of Moderate Limitations in Concentration, Persistence, or Pace

At step three, the ALJ found moderate limitations in concentration, persistence, or pace, relying on the persuasive opinions of state agency psychologists. (Doc. 11-2, pgs. 17, 26; Doc. 11-4, pgs. 43-44, 68-69).[6] Consistent with the 2017 amendments to the regulations, a "moderate" limitation means that Plaintiff's functioning in this area, independently, appropriately, effectively, and on a sustained basis is "fair" rather than poor or inadequate. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00F(2)(c). The ALJ accounted for this limitation by restricting Plaintiff's RFC to simple and detailed, but not complex, instructions and to occasional interaction with supervisors, coworkers, and the public. (Doc. 11-2, pg. 18). Such a formulation is not insufficient as a matter of law. Although *O'Connor-Spinner* cautions that simple-work limitations do not always address deficits in concentration, persistence, or pace, subsequent Seventh Circuit decisions under the amended regulations clarify that moderate limitations in this area are not inherently inconsistent with a residual functional capacity for simple, routine, repetitive tasks when supported by narrative medical evidence. *See Pavlicek v. Saul*, 994 F.3d 777, 783 (7th Cir.

---

[6] The state-agency psychologists rated Plaintiff as being moderately limited in his ability to carry out detailed instructions and in his ability to maintain attention and concentration for extended periods. Plaintiff received a rating of "not significantly limited" for all other categories. (Doc. 11-4, pgs. 43, 68). The state-agency psychologists narrative explained as follows:

> Per results of testing of didactic items in mental status as conducted by [the consultative psychologist] attentional skills are intact and adequate for unskilled as well as semi-skilled tasks. CT performs reasonably well on cognitive tasks on MSE that sample skills of attending, persistence, and pace (digit recall, serial 3's & backwards spelling). Report of observations regarding persistence during CE describe good participation in interview. Carries out a fair range of daily activities w complaints of physical limitations. On report of daily functioning, CT is described w some limitation of attention. Symptoms of depression/anxiety moderately limit ability to manage complex tasks.

(Doc. 1104, pgs. 44, 68).

2021) (holding that a moderate CPP limitation is "consistent with the ability to perform simple, repetitive tasks at a consistent pace" where supported by consultants' narrative findings); *Hess, 92 F.4th at 679* (affirming an RFC for "simple, routine, and repetitive tasks" with no production quotas where it corresponded to moderate CPP limitations and "fair" functioning).

Here, the ALJ provided a detailed explanation linking the evidence to the RFC, thereby eliminating any need for remand. (Doc. 11-2, pgs. 17, 25-29). He prioritized the state-agency psychologists' narrative assessments over checklist ratings, consistent with agency guidance. POMS DI 24510.060(B)(2)(a) (providing that ratings serve merely as a worksheet to aid in determining functional restrictions). Those narratives indicated that the Plaintiff's attentional skills were intact and adequate for unskilled as well as semi-skilled tasks; that symptoms moderately limited his ability to manage complex tasks; that he should observe moderate limitations in social expectations; and that he could engage in unskilled and semi-skilled productive activity with modified social demands. (Doc. 11-4, pgs. 43-44, 68-69). Significantly, the psychologists rated Plaintiff as not significantly limited in completing a normal workday and workweek without interruptions from psychologically based symptoms or in performing at a consistent pace without an unreasonable number and length of rest periods. (Doc. 11-4, pg. 43, 68).  By equating simple tasks to unskilled duties, the administrative law judge reasonably interpreted the opinions as addressing limitations in concentration, persistence, or pace through restrictions on task complexity rather than on pace or persistence, a permissible

approach. *See Pavlicek*, 994 F.3d at 783 (narratives "adequately encapsulate[d] and translate[d]" moderate checklists where they specified consistent pace for simple tasks); *Keith K. v. O'Malley*, No. 23 CV 1622, 2024 WL 4723622, at \*7-8 (N.D. Ill. Nov. 8, 2024) (affirming similar translation, noting no need to restrict each CPP sub-area under § 12.00F.3.f).

Plaintiff maintains that reversal is required because the ALJ did not explicitly delineate the problems underlying the moderate rating in concentration, persistence or pace. However, the regulations do not mandate dissection of each sub-area when the overall rating is moderate and the residual functional capacity holistically accounts for the evidence. § 12.00F.3.f ("it is not necessary to articulate the rating for each individual part"). Here, the logical bridge is apparent: the state-agency psychologists linked any difficulties, such as moderate issues with extended attention, to complex tasks rather than to persistence in unskilled work, and the record revealed no needs related to pace. *See Burmester v. Berryhill*, 920 F.3d 507, 511 (7th Cir. 2019) (ALJ permissibly relied on expert's narrative that concentration was "manageable" for simple instructions). No apparent conflict necessitates remand, as the administrative law judge resolved any perceived inconsistencies by deferring to the narratives and the overall record.

### 4. Redirection and Persistence Needs

The administrative law judge recognized the Plaintiff's difficulties with redirection but concluded that such needs were infrequent, responsive to intervention, exceptional in nature, and limited to more complex matters. These difficulties did not

21

necessitate additional restrictions in the residual functional capacity for simple, unskilled work. (Doc. 11-2, pp. 17, 25-27). In support of this determination, the administrative law judge cited Plaintiff's daily activities, which included driving, shopping, watching television and movies, preparing meals, doing laundry, managing finances, vacuuming, making household repairs, and using the internet. These activities demonstrated persistence without disruption in simpler tasks. (Doc. 11-2, pp. 17, 27). The administrative law judge further observed that treatment records documented only infrequent redirection, to which the Plaintiff responded well, and that neither the consultative psychologist nor the treatment providers suggested any need for shortened sessions, extra breaks, or comparable accommodations due to symptoms. (Doc. 11-2, pp. 17, 27). Additionally, the administrative law judge relied upon the state-agency psychologists, who reviewed the consultative examination, including notations of tangential thought processes and difficulty with redirection, yet determined that cognitive limitations impacted only complex work, not simple or unskilled tasks. (Doc. 11-2, pp. 17, 25-27; Doc. 11-4, pp. 38, 41-43, 67-69). The Plaintiff, who bears the burden of establishing not just the existence of conditions, but of providing evidence that those conditions support specific limitations in his capacity to work, presented no opposing assessment or other evidence indicating that redirection was required for the completion of simple, unskilled tasks. *See Weaver v. Berryhill*, 746 F. App'x 574, 579 (7th Cir. 2018).

Contrary to the Plaintiff's contention, the administrative law judge was not obligated to specifically address the vocational expert's testimony regarding once-daily redirection, as that testimony arose solely in response to a hypothetical limitation that the

administrative law judge did not adopt in the RFC. Vocational experts provide information on the kinds of work a hypothetical person with certain limitations can perform but do not opine on a claimant's RFC or resolve factual disputes. See HALLEX I-2-6-74; *Pagos v. Colvin*, No. 13 CV 4430, 2015 WL 1502923, at *7 (N.D. Ill. Mar. 27, 2015) (explaining that VE testimony pertains to hypothetical individuals with given RFCs, not to a claimant's specific condition or limitations). An ALJ commits no error by omitting discussion of alternative hypotheticals that include limitations ultimately deemed unsupported by the record. *See Grant A.G. v. Comm'r of Soc. Sec.*, No. 120CV01209JESJEH, 2021 WL 8444634, at *7 (C.D. Ill. Oct. 19, 2021) (rejecting claim that ALJ must discuss VE testimony on unadopted hypotheticals, as VE opinions are not binding and must be weighed with other evidence), report and recommendation adopted, No. 20-CV-1209-JES-JEH, 2022 WL 989472 (C.D. Ill. Apr. 1, 2022).

### 5. Social Functioning, Agitation, and Anger

The Plaintiff argues that the administrative law judge overlooked treatment records and consultative notes concerning the Plaintiff's struggles with anger, lashing out, and interactions with others. However, the administrative law judge discussed both the treatment notes and the consultative psychologist's observations regarding occasional outbursts of anger or aggression. (Doc. 11-2, pp. 16-17, 20, 22, 25). The administrative law judge noted that, although the Plaintiff became angry at times and expressed it through loudness, he was never discharged by a medical provider or warned about inappropriate conduct. The record further reflected that, despite occasional outbursts, the Plaintiff established rapport with treatment providers and interacted with

the community sufficiently to meet his needs. Additionally, while the consultative examiner noted aggressive thought processes, the Plaintiff's demeanor was described as pleasant, his behavior and ability to relate as normal, and his affect as superficially bright. (Doc. 11-2, pp. 16-17, 20, 22, 25). The administrative law judge reasonably deferred to the state-agency psychologists, both of whom reviewed the consultative examination and acknowledged the aggressive thought processes alongside the pleasant demeanor and bright affect. They concluded that the Plaintiff had moderate limitations in social expectations, meaning fair or adequate social functioning, and the administrative law judge found these opinions persuasive. (Doc. 11-4, pp. 43-44, 68-69). Based on this evidence, the administrative law judge determined that the Plaintiff could tolerate occasional interactions with supervisors, coworkers, and the public and respond appropriately during those interactions. This finding aligned with the consistent assessments of the state-agency experts. The administrative law judge considered the record in its entirety, including the Plaintiff's interactions with family, daily activities, engagements with providers, and the expert opinions, and concluded that the Plaintiff can cooperate with others, understand and respond to social cues, reply to requests and suggestions, and maintain social interactions free of excessive irritability or aggression within the specified residual functional capacity limits. This determination is supported by substantial evidence.

In summary, the administrative law judge's mental residual functional capacity determination is logically connected to the evidence and supported by substantial evidence. Accordingly, remand on Claim 2 is not warranted.

C. **Degenerative Disc Disease and Obesity**

Plaintiff argues that remand is required because the ALJ's RFC failed to account for the combined impact of his lumbar degenerative disc disease and obesity, rendering it unsupported by substantial evidence. Specifically, Plaintiff contends that the ALJ's finding of these impairments as non-severe, without incorporating any physical limitations related to pain, standing, or walking, overlooked their synergistic effects. This argument lacks merit, as the ALJ's analysis was thorough and supported by substantial evidence.

The ALJ properly evaluated Plaintiff's lumbar degenerative disc disease at step two, noting imaging that revealed only mild spondylosis, mild degenerative arthrosis of the right first MTP joint, and a small spur, with no acute abnormalities after a 2021 lifting incident and mild degenerative changes in January 2022 imaging. (Doc. 11-2, pg. 22). Even after February 2023 treatment for acute back pain and muscle strain from lifting a stove, Plaintiff's examination was largely normal, showing decreased lumbar range of motion and spasms but intact gait, strength, and reflexes. (Doc. 11-2, pg. 24). These mild, episodic findings support the ALJ's non-severe determination and lack of exertional RFC limitations.

The ALJ likewise addressed Plaintiff's obesity, documenting a body mass index in the thirties, which falls within the non-extreme category. (Doc. 11-2, pg. 14). Examinations showed normal gait and posture, range of motion in all extremities, muscle strength, muscle tone, and reflexes. (Doc. 11-2, pg. 14). Critically, the ALJ considered the potential exacerbating effects of obesity, acknowledging that it "likely exacerbates [Plaintiff's] pain

25

levels and hampers his ability to move." (Doc. 11-2, pgs. 14, 23). However, the ALJ reasonably determined that the objective evidence did not demonstrate impacts on musculoskeletal, respiratory, or cardiovascular functioning sufficient to impose limitations beyond those in the RFC. (Doc. 11-2, pgs. 14, 23).

Plaintiff produced no medical opinion or other persuasive evidence suggesting that his obesity, alone or in combination with disc disease, caused greater standing or walking limitations than the ALJ found. The ALJ relied on the unrefuted opinions of state-agency medical consultants, who concluded that Plaintiff's non-extreme obesity imposed no such restrictions. (Doc. 11-4, pgs. 39-40, 64-65). These experts reviewed the record and found the combined impairments non-limiting. The ALJ bolstered his assessment by relying on the persuasive opinion of the consultative examining physician who evaluated Plaintiff in 2022, noting normal results including normal gait, full muscle strength, ability to squat and rise normally, and no difficulty getting on and off the exam table, with the physician imposing no functional restrictions. (Doc. 11-2, pgs. 23-24; Doc. 11-23 pgs. 17-27).

Plaintiff points to a 2023 physical therapy observation of reduced strength following the stove-lifting incident. But the ALJ addressed this treatment, noting physical therapy for low back pain without evidence of ongoing abnormal exam results affecting standing or walking. (Doc. 11-2, pg. 24). State-agency physician Dr. Bilinsky similarly found that Plaintiff's conditions would not cause significant restrictions in basic work-related functioning. (Doc. 11-4, pgs. 64-65). Moreover, Plaintiff did not testify that obesity affected his functioning, and as discussed in the analysis of Claim 1, the ALJ reasonably

discounted his subjective complaints as inconsistent with the objective record.

For these reasons, remand is not warranted as to Claim 3.

## VI.   Conclusion

For these reasons, the Complaint (Doc. 1) filed by Plaintiff Ronald E. D. is **DENIED**, and the final decision of the Commissioner of Social Security denying his application for Disability Insurance Benefits and Supplemental Security Income is **AFFIRMED**. This action is **DISMISSED** with prejudice, and the Clerk of Court is **DIRECTED** to enter judgment in favor of Defendant Commissioner of Social Security.

**SO ORDERED.**

Dated: March 16, 2026

 

_____
DAVID W. DUGAN
United States District Judge

27